**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1803**

NICHOLAS BERNARDO,

                  Plaintiff - Appellant,

        v.

NATIONAL CITY REAL ESTATE SERVICES, LLC, an Ohio limited
liability company, successor by merger to National City
Mortgage, Incorporated, formerly known as National City
Mortgage Company doing business as First of America Mortgage
Company; SAMUEL I. WHITE, P.C.,

                  Defendants – Appellees.

---------------------------------------

VIRGINIA POVERTY LAW CENTER; NATIONAL ASSOCIATION OF
CONSUMER ADVOCATES; NATIONAL CONSUMER LAW CENTER; HOUSING
OPPORTUNITIES MADE EQUAL,

                  Amici Supporting Appellant.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.   Leonie M. Brinkema,
District Judge. (1:10-cv-00080-LMB-JFA)

Argued: March 22, 2011            Decided: May 26, 2011

Before WILKINSON, KEENAN, and DIAZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Christopher Edwin Brown, BROWN, BROWN & BROWN, PC, Alexandria, Virginia, for Appellant. Daniel J. Tobin, BALLARD SPAHR, LLP, Bethesda, Maryland, for Appellees. **ON BRIEF:** Ronald J. Guillot, Jr., SAMUEL I. WHITE, P.C., Virginia Beach, Virginia, for Appellee Samuel I. White, P.C. Thomas D. Domonoske, Brenda Castaneda, LEGAL AID JUSTICE CENTER, Charlottesville, Virginia, for Amici Supporting Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After defaulting on a $330,000 home loan, Nicholas Bernardo filed a lawsuit to quiet title over his property and to obtain a declaratory ruling that the current holder of the promissory note memorializing his loan cannot foreclose on the property. Having recently rejected an identical claim in Horvath v. Bank of New York, No. 10-1528, we affirm the district court's dismissal of Bernardo's lawsuit.

I.

On October 31, 2002, Nicholas Bernardo signed a first promissory note and deed of trust on his property at 11916 Cane Brake Mews in Manassas, Virginia. In June 2004, Bernardo decided to refinance his mortgage debt by securing a loan from National City Mortgage Company ("National City") in the amount of $330,000. Lawyers Title Services Inc. agreed to serve as the trustee for the loan and National City decided to service the loan.

The terms of the note clarified that National City could freely transfer it at any time. The note stated that the lender "may transfer this Note" and that the "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" The note holder, in turn, obtained certain rights over the loan, such as

3

the right to determine whether excess payments would be counted towards future interest or principal, the right to receive late charges, and the right to accelerate the payment of the loan in the event of default.

The deed of trust likewise confirmed National City's ability to transfer the loan. Section 20 explained that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." The deed of trust also clarified that in the event of such a sale, "[t]he covenants and agreements of this Security Instrument shall bind . . . and benefit the successors and assigns of Lender."

In August 2004, National City sold Bernardo's loan to Freddie Mac. At that point, the loan was securitized: Bernardo's loan was pooled with others and shares in that pool were sold to investors. Nevertheless, National City continued to service the loan after the sale. National City retained possession of the note, meaning that in May of 2009, National City Real Estate Services, LLC ("NCRES") – an entity created to assume many of National City's functions – had the note.

Over the next few years, Bernardo began to miss payments on the loan. On May 5, 2009, NCRES filed a substitution of trustee document in the Prince William County Circuit Court Clerk's office. That document, prepared by Samuel I. White, asserted

4

that NCRES was the "present owner and holder of the note secured" and appointed White as the substitute trustee. White then scheduled a foreclosure sale on the property.

On December 29, 2009, Bernardo filed a four-count complaint in the Prince William County Circuit Court against NCRES and White. The complaint contained one claim under the federal Fair Debt Collection Practices Act ("FDCPA"), one claim seeking a declaratory judgment that NCRES and White could not enforce the note, one claim of breach of fiduciary duty, and one claim to quiet title over the property. In response, White cancelled the foreclosure.

PNC Bank – the successor by merger to NCRES – timely removed the case to federal court on January 27, 2010 and filed a motion to dismiss shortly thereafter. On April 30, 2010, the district court conducted a hearing at which PNC Bank presented for inspection the original note signed by Bernardo. The court concluded that PNC's production established that it was "in possession of the original note," which was endorsed in blank. As a result, the court dismissed Bernardo's claims in a brief memorandum opinion issued on June 14, 2010. The district court noted its agreement with the reasoning of other judges in similar cases, including the district court's opinion in Horvath v. Bank of New York. This appeal followed.

II.

Under Virginia law, negotiable instruments (like Bernardo's mortgage note) are freely transferable. As a matter of common law, Virginia has allowed the bearer of a negotiable instrument (that is, the person to whom funds are owed) to endorse the instrument "in blank," meaning that "every bearer or holder, be he agent, trustee, finder or thief, has a right to sell [the instrument], and to transfer it, by delivery." Whitworth v. Adams, 26 Va. (5 Rand.) 333, 1827 WL 1200, at *45 (1827) (Cabell, J.). This policy is reflected in the Virginia code as well: once an instrument is endorsed in blank, it "may be negotiated by transfer of possession alone." Va. Code Ann. § 8.3A-205(b). And where a note goes, the underlying deed of trust follows, for under Virginia law, interests in deeds of trust accompany the promissory notes that they secure. See Williams v. Gifford, 124 S.E. 403, 404 (Va. Special Ct. App. 1924) ("[D]eeds of trust and mortgages are regarded in equity as mere securities for the debt, and whenever the debt is assigned the deed of trust or mortgage is assigned or transferred with it.") (citing McClintic v. Wise's Adm'rs, 66 Va. (25 Gratt.) 448, 1874 WL 5664 (1874)).

In combination, these principles defeat Bernardo's claims. Bernardo's mortgage note is a negotiable instrument under Va. Code Ann. § 8.3A-104. That note was endorsed in blank, meaning

6

it was "payable to bearer," or enforceable by whoever possessed it. Va. Code Ann. § 8.3A-205(b). And the deed of trust accompanied the note. See id. § 55-59(9) ("The party secured by the deed of trust, or the holders of greater than fifty percent of the monetary obligations secured thereby, shall have the right and power to appoint a substitute trustee or trustees for any reason."). Thus, once Bernardo defaulted on the property, Virginia law allowed the current holder of the note to foreclose.

To be sure, parties may contract around these baseline rules applicable to negotiable instruments, see id. § 8.1A-302(a), but both the note and the deed of trust demonstrate that the parties intended to allow the loan to be freely transferred. The note, for example, established that "the Lender may transfer this Note," declared that "[t]he Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is . . . the 'Note Holder,'" and granted the note holder the right to make various decisions about the administration of Bernardo's obligations and about how to deal with default. The deed of trust used similar language, asserting that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower," and clarifying that "[t]he covenants and agreements of this Security Instrument

7

shall bind . . . and benefit the successors and assigns of Lender." Taken together, these provisions confirm that PNC Bank – the current holder of the note – has the authority to foreclose on Bernardo's property.

In other words, it is undisputed that there was no alteration to the note or deed of trust at any time, that there was no change in the terms of payment on the note, that Bernardo was in default on his obligations, and that the note was endorsed in blank and is currently in PNC Bank's hands. To conclude that Bernardo should receive undisputed title to his property based on these facts would be fundamentally at odds with longstanding Virginia law.


III.

Bernardo makes a number of arguments in response, but they are identical to those mounted by the appellant in Horvath v. Bank of New York, No. 10-1528. Having reviewed and rejected these contentions in Horvath, we adopt the same approach here. The judgment of the district court is therefore affirmed.


AFFIRMED

8